UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LINDA BERNING, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LOCAL 2209 UAW, JAMES ZENT, )<br>and ORVAL PLUMLEE, )<br>)<br>Defendants. ) | CIVIL NO. 1:06cv170 |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendants, Local Union 2209, United Automobile, Aerospace and Agricultural Implement Workers of America, James Zent and Orval Plumlee, on June 28, 2007.  The plaintiff, Linda Berning ("Berning"), proceeding pro se, filed her response on August 6, 2007.  The defendants replied on August 24, 2007, to which Berning filed a sur-reply on September 10, 2007

For the following reasons, the motion for summary judgment will be granted.

Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The standard for granting summary

judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to

grant a directed verdict where there can be but one reasonable conclusion.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 250 (1986).  A scintilla of evidence in support of the non-moving

party's position is not sufficient to successfully oppose summary judgment; "there must be

evidence on which the jury could reasonably find for the plaintiff."  Id.  In Re Matter of

Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988);

Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986).

No genuine issue for trial exists "where the record as a whole could not lead a rational trier of

fact to find for the nonmoving party."  Juarez v. Ameritech Mobile Communications, Inc., 957

F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986)).

    Initially, Rule 56 requires the moving party to inform the court of the basis for the

motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories,

and admission on file, together with the affidavits, if any, which demonstrate the absence of a

genuine issue of material fact, Celotex, 477 U.S. at 323.  The non-moving party may oppose the

motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings

alone is not sufficient to withstand summary judgment.  Goka v. Bobbitt, 862 F.2d 646, 649 (7th

Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline

Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

    So that the district court may readily determine whether genuine issues of material fact

exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of

Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist.  In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated.  See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994).  In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses.  Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511.  Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion.  L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  Anderson, 477 U.S. at 248.  Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute.  Id.  The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e).  To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988).  The non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  Id.  A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law." <u>Anderson</u>, 477 U.S. at 251-252.  Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate.  <u>Mason v. Continental Illinois Nat'l Bank</u>, 704 F.2d 361, 367 (7th Cir. 1983).

Discussion

Linda Berning is and has been an hourly production employee of General Motors Corporation (GM) at its Fort Wayne Assembly Plant since May 1995. (Linda Berning Deposition I, 24-25) Since her hire, she has been a member of the UAW International Union and its Local 2209, which represent production and maintenance employees at the Fort Wayne facility. (*Id.*)

Berning has filed this action *pro se* against her Local Union and two of its officers under the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §401 et seq. Her Complaint alleges as follows:

> Plaintiff is entitled to relief in this action because (if more space is needed, attach additional pages): defendants violated LMRDA by dening [sic] plaintiff's free speech and participation rights at Local union meeting.

> The facts upon which this complaint is based are the following (if you need additional space, please attach additional pages): because I have criticized the union and its officers, and because I have filed a complaint with the NLRB, my rights of free speech and right to participate freely at union meetings have been denied or injured.

(Complaint, ¶¶ III, IV) Berning seeks damages of $750,000.00.

Berning asserts that her free speech rights were abridged at three (3) membership meetings of Local 2209, occurring on September 25, 2005, December 17, 2005, and February 25, 2006. (*Id.*) The issues which Berning wished to raise in the union meetings concerned one of the

4

grievances which is the subject of her Section 301 (29 U.S.C. §185) duty of fair representation action against Local 2209 in Cause No. 1:06-CV-00087-WCL-RBC in this court, and her internal union appeal of the withdrawal the grievance. In order to evaluate her denial of free speech claims, a review of the underlying grievance and internal union appeal is necessary.

Linda Berning began work at the Fort Wayne plant in May 1995 as a production worker. (Berning Dep. I, 24) Beginning in September 1999, Berning became embroiled in various disputes with GM concerning injuries which she asserted were work-related. (*Id.,* 27-29, 44-46, 49-50) As a result, she filed a series of grievances against GM under the collective bargaining agreement between GM and the UAW. (*Id.,* Exs. 5, 7, 8, 13) These grievances complained that GM's medical director and plant nurse were intentionally interfering with her ability to obtain worker's compensation coverage for her injuries based on a discriminatory motive.[1] (*Id.,* 74)

Two of the grievances alleged discrimination (commonly referred to by the parties as a paragraph "6a" violation, referring to the non-discrimination clause of the contract), and the first of these discrimination grievances, filed on or about November 20, 2002, was the underlying subject of Berning's attempts to address the membership during the disputed union meetings. Berning's Local 2209 Union representative, Mark Orr, had withdrawn this first discrimination grievance on or about March 20, 2003, for the stated reason of "no cited discrimination per para. 6A of the N/A." (*Id.,* 76-77, Ex. 8) Berning did not discover that the grievance had been withdrawn until the following year, in May or June 2004, at which time she initiated her internal union remedies under Article 33 the UAW Constitution by filing a written appeal of the action

---

[1]  Two of the grievances were settled, and the handling of the other two grievances formed the basis for Berning's Section 301 suit against the Union in the above-referenced related action.

5

with the Local 2209 Recording Secretary seeking reinstatement of the grievance. (*Id.,* 133-136, Ex. 15).

The UAW Constitution requires members to exhaust their UAW Constitutional appeal procedures before filing suit. (Curson Aff., Ex. 1, Art. 33, Sec. 5) Under Article 33 of the UAW Constitution, a UAW member has the right, at a membership meeting or in writing to the local union recording secretary, to challenge the actions of the Local Union, or its officials, in a wide range of areas including grievance handling. (Curson Aff., ¶4; Ex. 1, Art. 33) If the member wishes to challenge the actions of an agent of the International Union, the challenge is filed directly with the International Executive Board ("IEB"). (*Id.,* Art. 33, §§2(a) and 3(d)) A member has sixty (60) days to initiate an appeal to the local union membership. (*Id.*, Art. 33, §§3(a) and 4(c)) If the membership rejects the appeal, <u>or does not act</u>, the member has the right to appeal within thirty (30) days to the IEB. (*Id.*; §§3(d) and 4(c))

The specific appeal procedures for a member who wishes to challenge rulings occurring during local union membership meetings are as follows:

> For any action or decision pertaining to the following matters: . . . rulings of the Chair on procedural questions arising during Local Union membership and other meetings; . . . the appeal shall be to the membership of the Local Union . . . . There shall be no further appeal from the decision of the membership of the Local Union . . . .

(*Id.,* Art. 33, §2(b)) This provision essentially mirrors the rules of parliamentary procedure by encouraging members to challenge rulings of the Chair at the meeting at which they occur. However, under Article 33, Section 3(a), of the UAW Constitution, an appeal to the membership may also be made in writing to the Recording Secretary, and must be made within sixty (60) days. (*Id.*, §4(c))

6

Under the UAW Local 2209 Bylaws, Article 33 appeals filed with the Local Union Recording Secretary are initially referred to the Local Union Executive Board (LEB), or, if the appeal involves grievances under the collective bargaining agreement, to the Shop Committee, for initial decision after consultation with the grievant. (Zent Decl., Ex. 15, Art. 13, §1(A), (B)) The decision of the Shop Committee or LEB is to be rendered within thirty (30) days of notification of the appeal, and if dissatisfied with the decision, the grievant, within thirty (30) days of notification, must submit a written appeal to the Recording Secretary for consideration at the earliest possible membership meeting. (*Id.*, Art. 13, §1(C)) Except as limited by Article 33, §2(b) quoted above, for procedural rulings at membership meetings, the member may thereafter appeal the action, or lack of action, of the Local Union to the IEB within thirty (30) days, as detailed above. (Curson Aff., ¶4;Ex. 1, Art. 33, §§2(a), 3(d) and 4(c))

In many cases, an appeal to the IEB results in a hearing. (Curson Aff., ¶5) At the hearing, the member has the right to be represented by counsel, to produce evidence, and to submit a brief. (*Id.*, ¶5) If the member is dissatisfied with the decision of the IEB, the decision may be appealed to either the Public Review Board ("PRB"), which is established under Article 32 of the UAW Constitution, or the Convention Appeals Committee ("CAC"), which consists of elected delegates pursuant to Article 33 of the UAW Constitution. (Klein Aff., ¶4; Curson Aff., ¶¶ 6, 7; Ex.1, Arts 32 and 33, ¶3(e) and (f)). A union member has thirty (30) days to initiate this step of appeal. (*Id.*, Ex. 1, Art. 33, ¶4(c)). The PRB consists of distinguished individuals not working under the jurisdiction of the UAW.  (Klein Aff., ¶¶4-6) Both the CAC and the PRB have authority to order the Union to pay the member on appeal money damages. (Curson Aff., ¶9; Klein Aff., ¶10)

7

Each and every dues paying member of the UAW is sent a copy of the newspaper known as SOLIDARITY, which is published by the UAW. (Kerson Aff., ¶¶3, 4) SOLIDARITY has published numerous articles over the years advising members of rights to appeal under the UAW Constitution. (*Id*. at ¶5; Exhibits 2-12)

The UAW Constitution also contains provisions under Article 31 "Trials of Members" for preferring charges against and conducting internal union trials of members and officers for violations of the Constitution and for any "conduct unbecoming a member". (Curson Aff., ¶4; Ex. 1, Art. 31) Because these proceedings are quasi-criminal in nature, the Local Union Executive Board (LEB) is charged with conducting a preliminary review of any charges for sufficiency, similar to a criminal arraignment or preliminary hearing. (*Id*., Ex. 1, Art. 31, §3) Under Article 31 procedures, if the LEB orders a trial after such review, the accused may appeal that decision to the IEB (effectively, an interlocutory appeal of the LEB ruling), thereby suspending any trial proceedings pending disposition by the IEB. (*Id*.) Upon appeal of the LEB ruling, the IEB does not review the underlying facts or substantive merits of the charges, but only whether the charges meet the procedural and subject matter requirements specified in Art. 31, §3(a) through (e). (*Id*.) Article 31 proceedings are thus distinct from internal union appeal proceedings under Article 33, much as criminal and civil proceedings are separate and serve different functions in the court system.

In the instant case, Berning did initiate an Article 33 appeal when she discovered that her first 6a discrimination grievance had been withdrawn. On July 2, 2004, Berning submitted a written appeal to the Local 2209 Recording Secretary specifically invoking her Article 33 appeal rights: "I, Linda Berning appeal the settlement of grievance #D31524 per article 33 section 3A of

8

the international constitution." (Berning Dep. I, 135-138, Ex. 15) Pursuant to the Local 2209

Bylaws, the appeal was referred to the Shop Committee for consideration. (*Id.*, 145-146, Ex. 16)

The result of the Shop Committee meeting concerning Berning's grievance appeal was that

a new discrimination grievance was filed on Berning's behalf to replace the withdrawn

grievance.  With the filing of this second discrimination grievance, Berning's understanding of

the status of her Article 33 appeal concerning the first discrimination grievance was that the

appeal was "tabled . . . until the new grievance was successful," at which time she would drop

her internal union appeal. (*Id.*, 158; see also 151-152, 156, 251)

　　　Due to the apparent lack of progress on her second grievance, Berning called Local 2209

Recording Secretary Carol Schultz in March 2005 and requested that her original discrimination

grievance be reinstated. (*Id.*, 166-173) Schultz informed her that her grievance could not be

reinstated because her Article 33 grievance appeal had been withdrawn, a fact that Berning

disputed. After a meeting between Berning and Schultz on March 17, 2005, about this matter,

Berning received a letter from the Union by certified mail, signed by Schultz, informing her that

her Article 33 appeal had been withdrawn based on her agreement with the Shop Committee to

file a new 6a discrimination grievance. (Berning Dep. I, 173-175, Ex. 21; Schultz Dep., 9, 14-24)

Although Berning received this letter on April 28, 2005, the letter was erroneously dated

September 20, 2004, a date shortly after her appeal had been considered by the Shop Committee

and the new discrimination grievance had been filed.

　　　Berning had another meeting with Recording Secretary Schultz on May 4, 2005, to

inquire about the seemingly back-dated letter and its assertion that she had withdrawn her

grievance appeal. At that meeting, Schultz printed, signed and handed a second letter to Berning,

also incorrectly dated September 20, 2004, stating that the Local Executive Board found no wrongdoing in the settlement of her first 6a discrimination grievance, that her appeal was denied, and that if she disagreed with the decision, she had "certain rights and obligations under Article 13 of the Local 2209 Bylaws and Article 33 of the International Constitution." (Berning Dep I, 175-177, Ex. 22)

According to the defendants, the error in the dates on these two letters was a clerical oversight. The second (May 4, 2005) letter had actually been drafted first, on or about September 20, 2004, right after the monthly Executive Board meeting on Berning's grievance appeal, as a form letter for denial of an appeal. The letter was never sent because the Union Shop Chairman instructed Recording Secretary Schultz that it was unnecessary to send the letter due to Berning's withdrawal of the appeal. However, the draft letter remained in the Union's computer. (Schultz Dep. 14-24, Exs. D, E) The letter received by Berning on April 28, 2005, confirming the withdrawal of her grievance appeal, was actually drafted in April 2005 after Berning had made inquiries as to the status of her grievance appeal. The date error occurred because Schultz used the earlier letter to Berning that remained in the computer, made the necessary revisions, but neglected to change the September 20, 2004, date on the original letter. (*Id*.)

The defendants contend that whatever the genesis of the letters may be, the core undisputed material fact concerning the letters and Berning's internal union grievance appeal is that she was notified in writing by the Union's Recording Secretary that she had withdrawn her grievance appeal at the Shop Committee, and that, in any event, her appeal had no merit and was denied. These two letters are the only written determinations Berning received concerning the status of her Article 33 appeal, have never been rescinded and remain the official position of the

Union regarding the status of Berning's Article 33 grievance appeal. (Berning Dep. I, 177;

Berning Dep. II, 287; Zent Dep., 27-30)

Berning had the opportunity to contest these determinations of her internal union appeal

by continuing to pursue the appeal, as provided in Article 13 of the Local 2209 Bylaws:

> Within 30 days of receiving notice of such decision [by the Shop
> Committee or Executive Board], the grievant, if wishing to appeal
> further, shall submit his/her appeal to the Recording Secretary, in
> writing, for consideration by the earliest possible Membership
> Meeting.

(Zent Decl., Ex. 15, Art. 13, §1(C)) Instead, Berning responded to these so-called "fraudulent"

letters (Berning Dep. I, 227-228) by pressing internal union charges against Mark Orr, the Local

2209 union representative she believed to be responsible for the mishandling of her grievance

and the issuance of the back-dated letters disposing of her Article 33 appeal. (Berning Dep. I,

178-180, Ex. 23; Curson Dep., 33-39, 57-59, 80-91) These charges were filed with the Local

2209 Recording Secretary on May 11, 2005, and expressly refer only to Article 31 charges for

conduct unbecoming a union member, with no request to appeal either of the September 20,

2004, letters. (Berning Dep. I, Ex. 23) The charges concern Orr's role in the genesis of the

disputed "fraudulent" letters and his allegedly improper conduct in withdrawing her

discrimination grievance. (*Id.*)

Berning does not claim to have pursued her Article 33 appeal procedures concerning the

withdrawal of her discrimination grievance beyond her meeting with the Shop Committee in

August 2004 and her March 2005 oral request to Recording Secretary Schultz to reactivate her

grievance. (Berning Dep. II, 288-290) After she received notice on April 28, 2005, that the Local

Union considered her appeal withdrawn, Berning filed no further appeal of the withdrawal of her

6a discrimination grievance as required by Constitutional procedures. (Curson Aff. ¶ 11; Curson Dep. 33-37, 57-60, 80-83, 85, 89-91) Rather, she allowed her Article 33 appeal to lapse and instead chose to invoke alternative remedies in her Article 31 charges against Orr and collateral attacks against the other Union officials. (Curson Dep., 107; also 80-83, 90-91)

With regard to the proceedings on Berning's Article 31 charges against Mark Orr for dropping her grievance and issuing the "fraudulent" letters, the LEB considered the Article 31 charges and initially ordered that trial proceedings begin at the June 2005 Local Union membership meeting. (Berning Dep. I, 180, Ex. 24) The proceedings were suspended, however, because Orr filed an appeal of the LEB determination with the IEB pursuant to Article 31 and 33 procedures. (*Id.*, 180-181; Curson Dep., 62) In December 2005, the UAW IEB issued a written decision upholding Orr's appeal, finding that Berning's charges against Orr were not a proper subject for Article 31 trial proceedings because they concerned "grievances and how they were allegedly handled or mishandled." (Berning Dep. I, 182, Ex. 25 at p. 7; Curson Dep., 50) In such cases the member's "remedy lies in the regular procedures established for such review under Article 33 of the Constitution." (Berning Dep. I, Ex. 25, p. 7)

The monthly membership meetings of Local 2209 are chaired by its President. (Zent Decl. ¶3, Ex. 15) The conduct of union meetings is governed by Robert's Rules of Order, and a copy of the Rules is available at the Chair's rostrum at each meeting. (*Id.*, ¶5) The Local 2209 Bylaws also set forth the order of business for membership meetings and provide that members will be allowed to speak no more than three (3) minutes on any one subject. (*Id.*, Ex. 15, Art. 4, §§ 5, 7)

The first membership meeting at issue took place on September 25, 2005. (Berning Dep.

I, 224) By this time, Berning had received the "fraudulent" letters concerning the withdrawal of her grievance appeal and had responded with internal union charges against Mark Orr, which remained pending before the International Executive Board due to Orr's appeal of the charges. The week prior to the meeting, Berning had visited the Union hall to speak with Recording Secretary Carol Schultz about the "fraudulent" letters and to investigate the authorship of the letters by interrogating the Union's clerical employee, Heather Littlejohn. (*Id.*, 227-231) Berning wanted Littlejohn to confirm her suspicions (and her internal union charges) that Mark Orr had instructed Littlejohn to prepare the letter saying Berning had withdrawn her appeal. However, Littlejohn refused to speak to Berning or Schultz about the letters without the presence of her own union representative who was not available at the time. (*Id.*)

A few days later, Berning attended the monthly union membership meeting with the intent of informing the membership about the "fraudulent" letters:

> I felt they had a right to know what was going on. You know, that–that another member had sent fraudulent letters, that a – the Union hall secretary was involved in this, a person that we were paying a lot of money to, you know, to work for us, was maybe involved in mail fraud. Yes, I felt that the membership had a right to know, and I wanted to know what was going on.

(Berning Dep. I, 232) Berning does not recall at what point in the order of business in the meeting that she began to speak, but she believes it was new business. (*Id.*, 227) Berning began by announcing to the membership that she had received a letter on April 28, 2005, mailed by Littlejohn, containing "completely false" information. (Berning Dep. I, Ex. 41) She then directly addressed Recording Secretary Carol Schultz, bypassing the Chair, with questions concerning who authorized the letter, and she read the letter aloud at the meeting. Schultz answered Berning's questions concerning the origin of and authorization for the letter and identified the

responsible union official. When Berning disputed the truth of Schultz's answers and began

arguing with her, a member from the floor raised a Point of Order that the matter being discussed

was not a proper matter to be raised at the meeting. The meeting Chair, Union President Jim

Zent, instead of immediately ruling on the Point of Order, extended Berning the unnecessary

(under Robert's Rules) courtesy of trying to persuade her that she should address these matters

outside of the union meeting and offered to investigate her questions about the letter and report

back to her. When she did not yield the floor, he called for a voice vote on the Point of Order.

Hearing several "no's", Berning voluntarily relinquished the floor and made no attempt to

challenge President Zent's actions. (*Id.*, 236, Ex. 41)

After the September 2005 meeting, Zent conducted an investigation and reported back to

Berning by letter dated November 22, 2005, that he was unable to determine who authored the

letter in question due to conflicting stories. (Zent Dep., 10-11, Ex. Q) Dissatisfied with his

response, Berning delivered a letter to Zent on December 7, 2005, requesting the details of his

investigation, including names of witnesses and the substance of their information. (Berning

Dep. I., 238-239, Ex. 42) She also demanded to know what had transpired with the office

secretary who typed the letter, and the status of her internal union grievance appeal and charges

against Mark Orr.

At the December 17, 2005, membership meeting, Berning rose to the microphone and

proceeded to ask President Zent about her December 7 letter to him and intended to interrogate

President Zent about the nature and extent of his investigation of the April 28 "fraudulent" letter

and the status of her internal union appeal and charge. (Berning Dep. I, 240-242, 246-249) Zent

called Berning out of order, stating that she had taken the issue outside the Local Union, and

therefore could not now speak on the issue before the membership meeting. (*Id.*) Berning continued to protest and was called out of order a second time (Berning admits she was instructed to stop speaking "[s]everal times, I think"–Berning Dep. I, 243). When she failed to yield and continued to insist that she should be allowed three minutes to speak, Zent instructed defendant Orval Plumlee, who was acting as Sergeant-at-Arms, to remove her from the meeting if she would not give up the microphone and sit down. (*Id.*) Berning chose to sit down and made no appeal to the membership meeting concerning Zent's out-of-order ruling as she had a right to do under Robert's Rules. (*Id.*, 243)

Prior to the February 25, 2006, membership meeting, Berning had received a copy of the decision by the International Executive Board which dismissed her May 2005 internal union charges against Mark Orr concerning the withdrawal of her grievance and the "fraudulent" letters terminating her grievance appeal. (Berning Dep. I, 182, 249-250) Berning asserts that her purpose for speaking at the February meeting was to request the membership to allow her to "untable" her grievance appeal and go back to the Shop Committee to make her case. (*Id.*, 250-256) Zent recognized her at the meeting because Berning had informed him of her desire to speak immediately before the meeting. During her explanation, two other members rose to object to her right to address the issue at the membership meeting, i.e., raised a Point of Order. (*Id.*, 252-253) Berning's account of this meeting is conflicting as to the exact procedural nature of events. Either President Jim Zent then framed a motion concerning whether Berning could reopen her grievance appeal, or a motion concerning whether she should be allowed to speak on the subject of reopening her appeal was made and voted on. Whichever motion was made, the membership voted 66 to 41 to deny Berning's right to speak and/or reopen her grievance appeal.

(*Id.*, 253-255; Schultz Dep., 54-59, Ex. L)

The defendants seek summary judgment on the grounds that: (1) plaintiff failed to exhaust reasonable internal union remedies as required by 29 U.S.C. § 411(a)(4); and (2) the undisputed material facts fail to establish that Berning's rights under 29 U.S.C. § 411(a)(2) were violated.

Title I of the LMRDA contains an explicit provision that members may be required to exhaust their internal union remedies:

> [A]ny such member may be required to exhaust reasonable hearing
> procedures (but not to exceed a four-month lapse of time) within such
> organization, before instituting legal or administrative proceedings
> against such organization or any officer thereof....

29 U.S.C. §411(a)(4). Whether to excuse a failure to exhaust remedies before bringing an LMRDA suit is a matter within the trial court's discretion. *Stevens v. Northwest Indiana District Council, United Brotherhood of Carpenters*, 20 F.3d 720, n. 28 (7th Cir. 1994). In exercising its discretion to determine if exhaustion is to be excused or required, the court is to be guided by the factors set forth in *Clayton v. UAW*, 451 U.S. 679 (1981), a case arising under Section 301 of the Labor Management Relations Act. *Stevens*, supra at n. 31; *accord Casumpang v. International Longshoremen's and Warehousemen's Union, Local 142*, 269 F.3d 1042, 1062 (9th Cir. 2001). While the Seventh Circuit requires the trial court to exercise its discretion in deciding whether exhaustion of internal union remedies is required in a particular case, it places the burden on the plaintiff to set forth facts "showing that the intra-union procedures are inadequate under *Clayton.*" *Fulk v. United Transportation Union*, 108 F.3d 113, 116 (7th Cir. 1997); *Sosbe v. Delco Electronics*, 830 F.2d 83, 86-87 (7th Cir. 1987). *Accord Hammer v. UAW*, 178 F.3d 856,

859 (7th Cir. 1999). Thus, it is the plaintiff's burden to establish that the available relief is

inadequate, unreasonable delay would occur, or hostility by union officials would prevent fair

consideration of her appeal. 451 U.S. at 689. *See also, Amalgamated Clothing Workers of*

*America Rank and File Committee v. Amalgamated Clothing Workers of America, Philadelphia*

*Joint Bd.*, 473 F.2d 1303, 1308 (3rd Cir. 1973) (exhaustion required in Title I actions absent

showing of irreparable harm to LMRDA rights or futility of appeal).

      The defendants contend that the UAW Constitution provides specific appeal procedures

for a member who wishes to challenge rulings occurring during local union membership

meetings. The member is required to appeal rulings of the chair to the membership for a vote,

and no further appeal is required or allowed.  This permits members who feel aggrieved by the

actions of the chair (ordinarily the Local President) to obtain an immediate and decisive review

of the contested ruling by raising the appeal during the meeting at which the member seeks to

speak. The appeal procedures also permit a member to file an appeal with the membership in

writing with the Recording Secretary for consideration at the next membership meeting. Such

written appeal must be filed within sixty (60) days.

      The defendants contend that these procedures are fair and adequate under the *Clayton*

exhaustion standard, and that Berning is unable to meet her burden to show otherwise. The

defendants point out  that little or no delay is involved; the available relief  would be to overrule

the chair and allow Berning to speak her three minutes and/or make her motion. The defendants

further contend that although Berning makes unsupported allegations of improper motive on the

part of the union officers due to her prior criticism of them, she has presented no evidence that

the general membership of the local would be unable to fairly consider her appeal of the chair.

A review of the record shows that Berning repeatedly admitted in her deposition that she made no attempt to challenge the rulings which allegedly prevented her from speaking her mind, either during any of the three contested union meetings or at any subsequent time. Other than the bare allegation that it would have been a "waste of time" to challenge or appeal the rulings, Berning has failed to demonstrate any grounds for excusing the exhaustion requirement. The appeal procedures here are based, in part, upon long established and impartial rules of parliamentary procedure. Berning complains of actions by Local 2209 President Jim Zent and Vice President Orval Plumlee. An appeal to the membership, an independent body, would put to a membership vote the propriety of the officers' actions. Although Berning may believe that the membership would not be sympathetic to her claims (the membership voted to cut off her speaking rights and/or deny her motion at two of the contested meetings), this clearly does not establish the "futility" required to avoid the exhaustion requirement. Otherwise, plaintiffs with unpersuasive claims and meritless appeals could routinely avoid exhaustion with a showing that their frivolous position would be rejected by the appellate body.

Other courts have required exhaustion of union remedies in cases involving challenges to parliamentary rulings. In *Harris v. International Longshoremen's Assn., Local No. 1291*, 321 F.2d 801 (3rd Cir. 1963), the plaintiffs alleged intentional departure from the basic rules of parliamentary procedure in order to deprive plaintiffs of their right to participate, including refusals to entertain appeals from the chair's rulings. The *Harris* court found that the plaintiffs could have filed internal union charges against the officer to obtain the necessary relief. Their failure to do so precluded their LMRDA action. *Id*., at 803-04. In so holding, the court rejected their further argument that a final decision could not have been obtained within the statutory four

month period. The court held that as long as an initial decision could be expected within the specified period that exhaustion was required. *Id.*, at 804-05.

As in *Harris*, in addition to a direct appeal of the Union President's rulings, Berning could have pressed internal union charges against President Zent under Article 31 of the UAW Constitution, providing an alternative forum for an appeal of his rulings against her.  As to defendant Plumlee, the acting Sergeant-at-Arms who she claims shouted in her face when Zent instructed him to remove her from the meeting, internal union charges for conduct unbecoming a union member would have been the appropriate internal remedy to pursue prior to filing suit.

The district court in *George v. Intern. Broth. of Teamsters, Chauffers, Warehousemen and Helpers of America, AFL-CIO*, 825 F.Supp. 328 (D.D.C. 1993), addressed a member's claims that he was improperly called out of order when speaking at a union meeting, and that the meeting was improperly adjourned under Robert's Rules. The court held that the plaintiff failed to appeal his challenge of the improper adjournment under the union's internal procedures, and therefore failed to properly exhaust his administrative remedies. *Id.*, at 333.

Policy considerations also support the need to require exhaustion in this case. The Seventh Circuit has expressed its concern that failure to apply strict pleading and proof requirements upon Title I plaintiffs under the LMRDA would endanger "union organizational stability and democratic action within a union" by allowing frivolous law suits by members who are simply "dissatisfied with actions taken by a majority of the union." *Scovile v. Watson*, 338 F.2d 678, 681 (7th Cir. 1964), cert. denied 380 U.S. 963 (1965). The identical danger would arise from relaxation of the statutory exhaustion requirements, which, in the instant case, would have submitted Berning's procedural complaints to the decision by the membership by majority vote.

19

Further, requiring resort to internal union remedies in this case "accords with the previously expressed policy of [the Seventh Circuit] against judicial interference with internal union affairs." *Grant v. Chicago Truck Drivers, Helpers & Warehouse Workers*, 806 F.2d 114, 117 (7th Cir. 1986) (a case arising under Title I of the LMRDA).

The defendants assert that they have submitted affidavits and exhibits establishing all the facts required to justify entry of summary judgment against Berning for failure to exhaust remedies under the UAW Constitution. These affidavits and exhibits purportedly establish: (1) the existence of fair and impartial UAW procedures for resolving members' complaints; (2) publications which provide notice to members of these procedures; (3) the time limits applicable to these procedures; and (4) Berning's failure to exhaust or even initiate her available remedies under the UAW Constitution. Based on these factual undisputed submissions, defendants claim that they are entitled to summary judgment in their favor because Berning failed to avail herself of fair and adequate internal union remedies prior to bringing suit.  This court agrees with the defendants .  Although Berning claims that she did not fail to exhaust administrative remedies.[2]

_____

[2]  Berning also claims that the exhaustion of internal union remedies is excused for violations of free speech rights under the LMRDA.  However, none of Berning's cited cases involve the denial of a member's right to speak at a union meeting.  Rather, in each case, independent retaliatory actions were taken against members because of the opinions they had expressed, such as removal from union office, filing of a defamation lawsuit, and assault.  Under these circumstances, the courts exercised their discretion to excuse the exhaustion requirement when adverse actions were taken against members in retaliation for their exercise of free speech rights.  The holdings do not apply to the present case because Berning alleges that the free speech violation consisted of the denial of her right to raise certain issues at union meetings, and not of independent adverse actions in response to her exercise of free speech.  Berning's case requires her to establbish that the matters she wished to raise were proper matters for consideration at the meetings in question.  Thus it is appropriate to require exhaustion in the form of a simple and quick appeal of the Chair's ruling to the membership, either at the meeting, or in writing to the Recording Secretary for consideration at a future meeting.  Harris v. International Longshoremen's Assn., Local No. 1291, 321 F.2d 801 (3rd Cir. 1963); George v.

However, she has not controverted the defendants' evidence that she made no attempt to challenge the rulings which she claimed prevented her from speaking.

The defendants next argue that the undisputed facts fail to establish a violation of Berning's free speech rights under the LMRDA.  In *Scovile v. Watson*, 338 F.2d 678 (7th Cir. 1964), cert. denied 380 U.S. 963 (1965), the Seventh Circuit established a strict standard for plaintiffs who seek to bring actions under Title I of the LMRDA. Much like the facts of the instant case, the plaintiff in *Scovile* alleged that the local union president prevented her from making a motion at a union meeting by allowing her to be interrupted and entertaining and granting a motion to adjourn the meeting, all in violation of the local's bylaws. The plaintiff's need to make the motion arose out of a disagreement between the local union president and the plaintiff that resulted in the union's refusal to arbitrate her discharge grievance. At the union meeting, the plaintiff attempted to make a motion to reverse the president's retaliatory action and allow her grievance to be arbitrated.

The Seventh Circuit dismissed plaintiff's LMRDA complaint under section 101(a)(2) (29 U.S.C. § 411(a)(2)) because the complaint failed to allege that plaintiff's motion was in order and proper for consideration at that time. In so doing, the court adopted a strict pleading requirement for suits alleging such violations due to the danger of frivolous law suits by dissatisfied union members. The court reasoned as follows:

> Although freedom of speech is a union member's right that is protected by section 101(a)(2) of the act, the exercise of the right at union meetings must accommodate itself to the union's correlative right to conduct its meetings in an orderly fashion and in accordance

Intern. Broth. of Teamsters, Chauffers, Warehousemen and Helpers of America, AFL-CIO, 825 F. Supp. 328 (D.D.C. 1993).

with its previously established rules. The statute itself places these conditions upon the right of a member. [Footnote omitted.] In the instant case plaintiff has failed to allege that the motion to reconsider the union's failure to arbitrate her discharge was in order and proper for consideration at that time.

It may be argued that only general allegations are required to state a claim for relief under the statute and that the allegations made by plaintiff were sufficient and that a trial on the merits would provide a more satisfactory disposition of the issues. We believe, however, that claims under Title I of the Labor-Management Reporting and Disclosure Action must be stated with much greater specificity than alleged by the plaintiff in this action and that if claims are not so specific as to show a clear infringement, the complaint is defective. Policy reasons dictate that such specificity be required. <u>Otherwise, unions might well be beset by frivolous law suits initiated by dissident members or those dissatisfied with actions taken by a majority of the union. Labor union organizational stability and democratic action within a union would likely be endangered unless allegations of a specific and substantial character are required in order to state claims for relief under the act.</u>

*Id.* at 680-681. (Emphasis added). While *Scovile* arose on a motion to dismiss, it is nevertheless applicable not only to a plaintiff's burden to plead the required elements of a claim under Title I of the LMRDA, but also to a plaintiff's burden to present triable issues of fact as to those elements to avoid summary judgment.

If a plaintiff cannot make the required showing that the attempted speech was in order and properly before the meeting, the union's failure to strictly adhere to parliamentary procedure in curtailing the member's right to speak does not violate the LMRDA. In *George v. Intern. Broth. of Teamsters, Chauffers, Warehousemen and Helpers of America, AFL-CIO*, 825 F.Supp. 328 (D.D.C. 1993), the plaintiff claimed that he was systematically denied the right to speak at union meetings by the local president. The president adjourned the meeting while plaintiff had the floor after he ignored the president's instructions to address his comments to the Chair and

not the membership.  The court agreed that the plaintiff was out of order for failing to address the Chair as required by Robert's Rules and therefore dismissed plaintiff's technical argument that the proper procedure was to call a point of order to enable the speaker to appeal the Chair's ruling to the membership. Citing *Scovile*, the court held that the meeting could be adjourned without a violation of §101(a)(2), even in violation of parliamentary procedure, when the member speaking is out of order. This accords with the Seventh Circuit's observation in another Title I case that "unfair conduct by union officials is not tantamount to illegal conduct." *Grant v. Chicago Truck Drivers, supra* at 119.

In the present case, it is clear that Berning falls short of her required showing. She has failed to establish that the matters she sought to raise at the meetings were in order and proper for consideration at the time. Nor can she show that the rulings of the Union President which prevented her from having her full say were improper. Even if procedural irregularities occurred, however, no violation of the LMRDA can be found because Berning was clearly out of order at the meetings.

With respect to the September 25, 2005, membership meeting, Berning's claim of denial of her right to speak and participate fails, first, for the reason that she was permitted to accomplish her stated purpose of informing the membership about the "fraudulent" letter and obtaining answers about the source of the letter. She was permitted to directly question the Recording Secretary (in violation of Robert's Rules requirements to address only the Chair), read the disputed letter aloud at the meeting, and inform the membership of the conflicting stories and her position concerning the content of the letter.

Berning's only remaining complaints are that she was not permitted to speak for a full

three uninterrupted minutes and that the point of order was not handled correctly because the President called for a voice vote on her right to speak. Even if these constitute procedural irregularities, Berning cannot show any harm, since the chair could have ruled her out of order without a vote, and in any event she failed to challenge the chair's action at the time. These procedural complaints should have been raised at the time under either Robert's Rules or the Union's appeal procedures, so that the Union could have been given the opportunity to cure any errors. For the same reason that objections must be raised in the trial court to preserve them for appeal, disgruntled union members cannot be permitted forego their procedural rights under Robert's Rules in order to create a basis for filing LMRDA actions, turning the courts into *ex post facto* parliamentary procedure police.

In any event, as noted earlier, any procedural irregularities are immaterial because Berning was clearly out of order. Not only was she improperly engaging in colloquy with the Recording Secretary rather than addressing the Chair as required by Robert's Rules, Berning had no right to raise the matters she addressed and thus cannot make the required showing that the subject matter of her speech was in order and proper for consideration at the meeting. Under the UAW Constitution, the membership meeting was not the proper forum for action at that time upon the "fraudulent" letter which stated that her grievance appeal had been withdrawn. In fact, Berning herself had already taken her claims concerning the "fraudulent" letters to another forum through her Article 31 charges filed against Mark Orr, thereby usurping any jurisdiction the membership might have had. (Berning Dep. I., Ex. 23) At the time of the September 2005 membership meeting, the question of the validity of her charges against Orr was before the International Executive Board (IEB) pursuant to Orr's appeal of the charges. All questions

involving the disputed letters would be decided in the context of her Article 31 charges pending before the IEB. The Local Union membership had no jurisdiction to make any decision or conduct any factual investigation, as that would be the responsibility of the Trial Committee, and only if the charges were permitted to proceed to that point by the IEB.

Furthermore, the issue could not be properly considered by the membership because Berning failed to exercise her appeal rights under Article 33 of the UAW Constitution and Article 13 of the Local 2209 Bylaws. She had thirty (30) days after receiving the so-called "fraudulent" letters to continue her Article 33 grievance appeal by submitting a written appeal to the Recording Secretary for subsequent action at a membership meeting. Since the letters had been issued to her nearly five (5) months earlier, this time period had long expired by the September 2005 meeting. The appeal forum would have provided an opportunity for her to make her claims of fraud and seek reinstatement of her grievance appeal. Her attempt to belatedly raise these issues at a membership meeting four months after her appeal period had expired was yet another improper collateral attack upon the decisions made on her grievance appeal. The undisputed facts thus reveal that Berning cannot make the required showing that her complaints were "business properly before the meeting" as required by the LMRDA. 29 U.S.C. §101(a)(2).

Likewise, Berning was not entitled to raise the same subject matter three months later at the December 17, 2005, membership meeting. At that meeting Berning intended to interrogate President Zent about the nature and extent of his investigation of the April 28 "fraudulent" letter and the status of her internal union appeal and charge, the same matters that she raised in her Article 31 charges against Mark Orr and the same letter she failed to pursue under her Article 33 appeal. As argued above, these matters regarding her grievance appeal were not proper for

membership action at that meeting. Zent called Berning out of order and had to call for enforcement of the order when she refused to yield the floor. Any other procedural complaints she may have, such as the propriety of Union Vice President Plumlee acting as Sergeant-at-Arms or his alleged abusive tone of voice, are immaterial given that her speech was properly ruled out of order. *Scovile, supra; George, supra.* Moreover, such technical irregularities should have been addressed immediately under parliamentary rules. *Cf. Patterson v. Tulsa Local No. 513, Motion Picture Operators*, 446 F.2d 205, 210 (10$_{th}$ Cir. 1971), cert. denied, 405 U.S. 976 (1972), reh'g denied, 406 U.S. 951 (1972) (plaintiff not denied free speech rights and properly ruled out of order pursuant to local's rules for conducting meetings where matter had been previously discussed and voted on and plaintiff had expressed his erroneous views before).

Yet undeterred, Berning again raised the issue of her internal union grievance appeal at the February 25, 2006, membership meeting. Rather than discussing the "fraudulent" letters, Berning sought to have the membership vote to directly overrule those letters by moving to "untable" her grievance appeal and go back to the shop committee. This time, Zent permitted Berning to speak without ruling her out of order, but two members challenged her right to bring the issue before the meeting (i.e., they were allowed to interrupt her, which is proper for a point of order). A vote was held, and her right to speak and/or her motion to reopen her grievance appeal was defeated 66 to 41.

In this meeting Berning was seeking a direct bypass of all proper Constitutional appeal procedures concerning her internal union grievance appeal. She has not pointed to any provision in the

Constitution which permits her to submit the reinstatement of her grievance appeal to a

membership vote nearly ten (10) months after the Local Union had notified her in writing that her appeal had been withdrawn. While Berning asserts that she was denied her right to make her own motion and her three minutes to explain it, she cannot show that her motion was "business properly before the meeting" under the LMRDA. The record shows that Berning was accorded more opportunity to speak than she had a right to demand, and the membership expressed its opinion with the negative vote. It is clear that no violation of her rights to free speech occurred at the February 2006 meeting.

Finally, Berning claims in her response that "[t]he union has willfully destroyed evidence for this case." Berning states that all three union meetings were tape-recorded and that the union has now disposed of all three of the tapes. Berning further states that the union also disposed of a tape recording made of her meeting with the shop committee. Clearly, however, this issue is not within the scope of Berning's LMRDA free speech claim. In any event, for purposes of this motion, Berning's version of the facts are accepted as true. Thus, the availability of the corroborating tapes is not material to the resolution of the motion.

Berning has failed to present any evidence that she exhausted reasonable internal union remedies as required by 29 U.S.C. §411(a)(4). Berning has also failed to make any evidentiary showing that her free speech rights under 29 U.S.C. §411(a)(2) were violated. Accordingly, the defendants' motion for summary judgment will be granted.

Conclusion

On the basis of the foregoing, the defendants' motion for summary judgment is hereby

GRANTED.


Entered: October 29, 2007.


s/ William C.  Lee
William C. Lee, Judge
United States District Court